**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **CORINNE ALICE SALAHI** | ) | **Case No. 11-16621-BFK** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the Motion of the Chapter 7 Trustee, Ms. Meiburger, for turnover of assets pursuant to 11 U.S.C. § 542(a) from the Debtor, Corinne Salahi, (Docket No. 33), and the Debtor's Response (Docket No. 39).  The Court heard evidence on April 13, 2012.  For the reasons stated below, the Court will grant the Trustee's Motion.

**Findings of Fact**

1.      On June 28, 2010, Corinne Salahi ("the Debtor" or "Ms. Salahi"), entered into the Dirgham Salahi Trust ("the Trust") as the Settlor.  Trustee's Exh. 1.

2.      Ms. Salahi was the sole settlor of the Trust.  *Id.*

3.      The sole asset of the Trust is a Promissory Note dated October 8, 2010 ("the Note"), in the principal amount of $166,872.22, executed by the Montessori School of Alexandria.  Trustee's Exh. 2.

4.      The Note is made payable to the Trust.  *Id.*  As consideration, the Note recites that: "[i]t is understood by the current Board of Directors that Dirgham and Corinne Salahi are owed back wages from the early years of the school."  Trustee's Exh. 2.  The Note also references an "attached detailed accounting" of the unpaid wages and interest, but no accounting was attached to the Note.

1

5.      The Debtor produced an accounting, showing that the Note was the product of wages owed to Mr. Salahi.  Debtor's Exh. B.

6.      Dirgham Salahi ("Mr. Salahi") is the Debtor's late husband.  He passed away on October 6, 2010 (two days before the Note was executed).

7.      The Trust names Mr. Salahi as the initial beneficiary.  Trustee's Exh. 1, Article II.

8.      The Trust further provides that, upon the death of Mr. Salahi, if the Debtor survives her husband, then the Trustee shall continue to hold and administer the Trust estate for the benefit of the Debtor.  *Id.* at Article IV(A).

9.      The School Building Fund of the Montessori School of Alexandria is named as a contingent beneficiary of the Trust, to which the trust estate is to be distributed in the event of the deaths of both Mr. and Ms. Salahi.  *Id.* at Article IV(B).

10.      The Debtor is the initially named, and sole, Trustee of the Trust.  *Id.* at Article VI(A).

11.      Article IV(A) of the Trust provides:

Trustee shall distribute the Trust income and principal to or for the benefit of Corinne Salahi, as she so directs, either verbally or in writing.

Trustee's Exh. 1, Article IV(A).

12.      The Trust states that it is irrevocable.  *Id.* at Article IX.

13.      The Trust also contains a spendthrift clause.  *Id.* at Article XI(B).

14.      The payments made on the Note initially were deposited into an account at United Bank denominated "Estate of Dirgham Salahi."  Trustee's Exh. 4.  After the Debtor filed her bankruptcy petition, the funds were deposited to an account designated "Dirgham Salahi Trust."

Trustee's Exh. 5.  The Debtor was the sole signatory on these accounts, and had complete control

over disbursements from the two accounts.

15.     The Debtor filed her voluntary petition in bankruptcy, under Chapter 7 of the

Bankruptcy Code, on September 8, 2011.  Docket No. 1.

16.     Ms. Meiburger is the duly appointed Chapter 7 Trustee.  Docket No. 22.

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of

Reference entered by the U.S. District Court for the Eastern District of Virginia on August 15,

1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) (orders to turn over property of

the estate), for which this Court has the authority to enter final orders.  *See* 28 U.S.C. § 157(b)

("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings

arising under title 11 . . . and may enter appropriate orders and judgments, subject to review

under section 158 of this title").

This case presents the intersection of Bankruptcy Code Section 541 (property of the

estate) and applicable State law regarding self-settled trusts.  Happily, in this case, the interests

of the Bankruptcy Code and applicable State law are not in conflict.

*A.  Bankruptcy Code Sections 542(a) and 541.*

Bankruptcy Code Section 542(a) provides:

Except as provided in subsection (c) or (d) of this section, an entity, other than a
custodian, in possession, custody, or control, during the case, of property that the trustee
may use, sell, or lease under section 363 of this title, or that the debtor may exempt under
section 522 of this title, shall deliver to the trustee, and account for, such property or the
value of such property, unless such property is of inconsequential value or benefit to the
estate.

11 U.S.C. § 542(a).

3

Both Sections 363(b)(1) and (c)(1) use the term "property of the estate." Thus, in order to determine what must be turned over under Section 542(a), the Court must turn to Section 541 of the Code.[1]

Section 541(a)(1) of the Code provides that property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(c)(2) provides that: "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). This provision of the Code recognizes the enforceability of spendthrift provisions in trusts where the debtor is a beneficiary of a spendthrift trust. *See Patterson v. Shumate*, 504 U.S. 753, 758 (1992) ("The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law"); *Levin v. Wachovia Bank*, 436 Fed.Appx. 175, 179 (4th Cir. 2011) (indicating that Section 541(c)(2) "excludes from the property of the bankruptcy estate interests in trust that are protected under a spendthrift clause that is enforceable under applicable state law").

Section 541(d) excludes from the estate property to which the debtor holds bare legal title in trust for another. 11 U.S.C. §541(d). *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998). Finally, Section 541(b)(1) provides that the estate does not include:

> any power that the debtor may exercise *solely for the benefit of an entity other than the debtor.*

---

[1]  Bankruptcy Rule 7001 generally requires an adversary proceeding to compel the turnover of property from third parties. However, the Rule contains an exception applicable here: ". . . other than a proceeding to compel the debtor to deliver property to the trustee." The Trustee, therefore, is not required to bring an adversary proceeding for the turnover of property from the Debtor.

11 U.S.C. § 541(b)(1) (emphasis added). The Court looks to applicable nonbankruptcy law to determine the interests of the bankruptcy estate in the Trust. *Butner v. U.S.*, 440 U.S. 48, 54 (1979).

      *B. Applicable Nonbankruptcy Law.*

      The Trust provides that it is governed by the laws of the Commonwealth of Virginia. Trustee's Exh. 1, Article XI(A). Ms. Salahi, who is the settlor, beneficiary, and Trustee of the Trust, is a Virginia resident. Accordingly, the Court will apply the laws of the Commonwealth of Virginia as the applicable non-bankruptcy law in this case.

      Virginia adopted the Uniform Trust Code in 2005. Va. Code § 55-541.01, *et seq.* Virginia recognizes the enforceability of spendthrift trust provisions. Va. Code §§ 55-545.01 - 55-545.03.[2] There are limitations on the enforceability of spendthrift provisions, however, notably, where the trust is a self-settled trust. Va. Code Section 55-545.05(A) ("Creditor's claim against settlor") provides as follows:

> *Whether or not the terms of a trust contain a spendthrift provision,* the following rules apply:
>
> 1. During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors.
>
> 2. With respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit. If a trust has more than one settlor, the amount the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust attributable to that settlor's contribution.

Va. Code § 55-545.05(A) (emphasis added).

---

[2] Virginia recognized the enforceability of spendthrift trusts in 1919, when it enacted Section 5157 of the Code of Virginia, the statute that later became Va. Code § 55-19. *Sheridan v. Krause*, 161 Va. 873, 891 (1934). The enactment of Section 5157 legislatively overruled the case of *Hutchinson v. Maxwell,* 100 Va. 169 (1902).

Further, Section (B)(1) provides that:

> During the period the power may be exercised, the holder of a power of
> withdrawal is treated in the same manner as the settlor of a revocable trust to the
> extent of the property subject to the power . . .

Va. Code § 55-545.05(B)(1).  Thus, where the beneficiary retains control over the use and

disposition of the trust assets (in statutory terms, a "power of withdrawal"), the trust is treated as

a revocable trust, despite the fact that, as here, the trust by its terms appears to be an irrevocable

trust.  *Id.*  For revocable trusts, the property of the trust is subject to claims of the settlor's

creditors, at least during the lifetime of the settlor.  Va. Code § 55-545.05(A)(1).

In this regard, the Uniform Trust Code is consistent with Virginia trust law going back at

least to 1910.  In the case of *Petty v. Moore's Brook Sanitarium,* Harry S. Langhorne, described

by the Virginia Supreme Court as "an improvident young man," "created a 'spendthrift trust' for

his own benefit."  110 Va. 815, 815, 67 S.E. 355, 355 (1910).  He conveyed valuable property to

the trust.  *Id.*  The debt in question was contracted for after the deed to the trust was executed and

recorded.  *Id.* at 815, 67 S.E. at 356.  The Court noted that "it [was] manifest from the deed that

Harry S. Langhorne was to have the sole beneficial use of the property conveyed, certainly

during his life, with power to dispose of what remained at his death by will."  *Id.* at 815, 67 S.E.

at 356.  The Court noted that a number of States had, by then, departed from the English rule that

spendthrift trusts were not enforceable as against the beneficiaries' creditors (though it was not

until 1919 that Virginia formally recognized the enforceability of spendthrift trusts, *see supra*

note 2).  *Id*. at 818-20, 67 S.E. at 356-357.

Assuming that a spendthrift trust would be enforceable as against the beneficiaries'

interest generally, the Court held that the assets of a spendthrift trust were subject to the claims

6

of the settlor's creditors. *Petty*, 110 Va. at 821, 67 S.E. at 357. The Court cited a number of

cases from Pennsylvania and Massachusetts in support of its holding, summing up as follows:

> A donor or settlor cannot, even in jurisdictions where spendthrift trusts are allowed, so
> dispose of his property for his own use, benefit, or support, as to put it beyond the reach
> of liabilty for his future debts. If such donor continues *sui juris*, and if there appears to be
> no reason for such disposition, except to withdraw his property from such liability, he
> cannot through the medium of a trust thus retain the temporal ownership without its usual
> incidents.

*Id.* at 820-21, 67 S.E. at 357 (quoting 26 *Am. & Eng. Ency. of Law* 147 (2d ed.)).

This long-held view is consistent with that of the great weight of authority from other

jurisdictions involving self-settled trusts. *See, i.e.*, *Cutter v. Seror (In re Cutter)*, 398 B.R. 6

(B.A.P. 9th Cir. 2008) (applying California law, and quoting the Restatement (Third) of Trusts §

58(2) (2003): "A restraint on the voluntary and involuntary alienation of a beneficial interest

retained by the settlor of a trust is invalid"); *In re Robbins*, 826 F.2d 293 (4th Cir. 1987)

(applying Maryland law, and relying on the Restatement (Second) of Trusts § 156(2)); *United*

*States v. Ritter*, 558 F.2d 1165, 1167-1168 (4th Cir. 1977) (applying West Virginia law, and

noting: "[b]y the great weight of authority it is held that (where the settlor himself has a general

power of appointment) the settlor is substantially the owner of the property, and that his creditors

can reach it whether he exercises the power or fails to exercise it . . ." (quoting A. W. Scott, *The*

*Effects of a Power to Revoke a Trust*, 57 *Harv. L. Rev.* 362, 364 (1944))); *Riley v. Tougas (In re*

*Tougas)*, 338 B.R. 164 (Bankr. D. Mass. 2006) (Massachusetts law); *Johnson v. McCoy (In re*

*McCoy)*, 274 B.R. 751 (Bankr. N.D. Ill. 2002) (Illinois law); *Lindquist v. Mack (In re Mack)*, 269

B.R. 392, 400 (Bankr. D. Minn. 2001) (applying Minnesota common law, and relying, in part, on

Restatement (Second) of Trusts § 156); *In re O'Brien*, 50 B.R. 67 (Bankr. E.D. Va. 1985)

(Virginia law).[3]

The Debtor in this case was the settlor of the Trust.  She is its sole beneficiary.  She is the

Trustee.  She retained complete control over the use and disposition of the assets.  *See supra*

Finding of Fact Nos. 11 and 14.  The Court holds that, consistent with the above authorities, the

assets of the Trust must be turned over to the bankruptcy Trustee.[4]

C.  *Mr. Salahi's Contribution to the Trust.*

The Debtor argues that the property was contributed by Mr. Salahi to the Trust, and

therefore, should be exempted from the Trustee's reach.  The Debtor's Exhibit B indicates, and

the Court accepts, that the Note was the product of Mr. Salahi's wages, and not Ms. Salahi's

earnings (despite the fact that the Note recites that it is for wages owed to Mr. and Mrs. Salahi).

The Debtor's argument is not without support.  The Fifth Circuit, applying Texas law,

has held that the interests of a beneficiary of a self-settled trust can only be reached to the extent

of the beneficiary's contributions to the trust, and not as to property contributed by others.

*Shurley v. Texas Commerce Bank – Austin, N.A. (In re Shurley)*, 115 F.3d 333, 338 (5th Cir.

1997).  This is consistent with the Uniform Trust Code's provision that defines a settlor as "a

---

[3]   The portion of the *O'Brien* case holding that the phrase "applicable nonbankruptcy law" under Section 541(c)(2) involved only State law, and not federal statutes like ERISA, was overruled in the Supreme Court's decision in *Patterson v. Shumate,* 504 U.S. 753, 758 (1992).  *In re O'Brien*, 50 B.R., at 74.  The portion of the opinion holding that "a settlor cannot create a spendthrift trust for himself to the detriment of his creditors," remains good law.  *Id.*, 50 B.R. at 75.
[4]   The Court notes that the Virginia legislature has enacted a new Asset Protection Trust (APT) statute, Va. Code §§ 55-545.03:2 and 55-545.03:03, effective July 1, 2012.  The Virginia statute follows the enactment of APT statutes in a number of other States, such as Alaska, Delaware, Nevada, Rhode Island and Utah.  The statute contains a five year "lookback" period for creditors.  It is equally noteworthy that in 2005, as a part of the BAPCPA Amendments, Congress enacted what is now Bankruptcy Code Section 548(e), providing the Trustee with the ability to avoid transfers to self-settled trusts or similar devices if made within 10 years of the petition date.  11 U.S.C. § 548(e).  Section 548(e) was a response to the enactment of the APT statutes by the State legislatures. Collier on Bankruptcy ¶ 548.07[1] ("Section 548(e) 'closes the self-settled trust loophole'" (quoting H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 449 (2005))).

person, including a testator, who creates, or contributes property to, a trust." Va. Code § 55-

541.03.  This Section goes on to provide:

> If more than one person creates or contributes property to a trust, each person is a
> settlor of the portion of the trust property attributable to that person's contribution
> except to the extent another person has the power to revoke or withdraw that
> portion.

*Id.*  That is, each person who contributes property to the trust is considered to be a settlor, as to

that party's contribution to the trust.  Therefore, the trust is not a "self-settled" trust, as to

contributions from other settlors.  *Shurley*, 115 F.3d at 337 ("Allowing creditors to reach only the

self-settled portion of the trust is consistent with the other long-standing rule of Texas law that a

settlor should be allowed to create a spendthrift trust that shields trust assets from the

beneficiary's creditors").

Even assuming that Mr. Salahi did contribute the entire amount to the Trust, however, the

Trust is still subject to the claims of Ms. Salahi's creditors.  The Trust provides that, upon Mr.

Salahi's death, Ms. Salahi is the sole beneficiary. Trustee's Exh. 1, Article IV(A).  Ms. Salahi

was the sole beneficiary on the date of the filing of her bankruptcy petition.  Immediately upon

becoming the sole beneficiary, Ms. Salahi acquired complete control over all of the assets of the

Trust estate.  *Id.* ("Trustee shall distribute the Trust income and principal to or for the benefit of

Corinne Salahi, *as she so directs*, either verbally or in writing") (emphasis added).  The entire

Trust is subject to the claims of Ms. Salahi's creditors under the plain meaning of the exception

contained in Va. Code § 55-541.03: "*except to the extent another person has the power to revoke

or withdraw that portion.*" (Emphasis added).  *See also Cutter v. Seror (In re Cutter)*, 398 B.R.

6, 21 (B.A.P. 9th Cir. 2008) ("Ordinarily, if only a portion of a spendthrift trust's corpus is

contributed by a beneficiary-debtor, only that portion becomes property of the beneficiary-

debtor's estate.  If, however, the trust agreement allows the debtor-beneficiary to exercise control

over and reach trust property contributed by others, the estate is entitled to the maximum amount

that the trust could pay or distribute to the debtor-beneficiary") (citations omitted); *Osherow v.*

*Porras* (*In re Porras*), 312 B.R. 81, 131 n.30 (Bankr. W.D. Tex. 2004) ("In addition, the general

rule is that, if the court declares a trust to be self-settled, the creditors can reach not only the

settlor's express interest, but also the maximum amount that the trust (through its trustee) could

pay the beneficiary or apply for his benefit under the terms of the Trust" (citing *Shurley*, 115

F.3d at 339-40)).

        The critical difference between the *Shurley* case and this case is that, in *Shurley,* there

were beneficiaries still living who had contributed property to the trust.  *Shurley*, 115 F.3d at

336.  Their interests were protected as co-settlors of the trust.  Here, the Debtor is the sole

beneficiary of the Trust, with complete control over the disposition of its assets.  Accordingly, it

makes no difference at this point whether Mr. Salahi or Ms. Salahi contributed the assets to the

Trust.  The Court will order a turnover of the Trust assets to the bankruptcy Trustee.

### Conclusion

        For the foregoing reasons, the Court finds that the assets of the Trust are property of the

bankruptcy estate under 11 U.S.C. § 541(a)(1).  The Court will order a turnover of the Trust

assets - the Note and its proceeds - to the bankruptcy Trustee, pursuant to 11 U.S.C. § 542(a).  A

separate Order will issue.


Date:                                    _____
                                         Brian F. Kenney
                                         United States Bankruptcy Judge

10

Copies to:

Corinne Alice Salahi
14141 Hume Road
Hume, VA 22639
Debtor

Thomas O. Murphy, Esquire
8709 Plantation Lane
Manassas, VA 20110-4506
Counsel for the Debtor

Janet M. Meiburger, Esquire
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101-5726
Chapter 7 Trustee

W. Clarkson McDow, Jr., Esquire
Office of the U.S. Trustee
115 South Union Street
Alexandria, VA 22314